May it please the Court. Good morning, Your Honors. My name is Elena Tiprin. With me is my law clerk from Seattle University Law School. And beside me, or seated behind me, is the Pasonok family, which I represent. Yuri Pasonok was born in Azerbaijan, and he's a Russian national. Svetlana Pasonok was born in the Ukraine, and she's a Russian national. Their daughter, Anna Pasonok, was born in Russia, thereby being a Russian national. And their daughter, Valeria, who is not a part of the proceedings, was born in the United States and will celebrate her 10th birthday in July of this year. The Pasonok family legally entered the United States in March of 1995 and timely filed for asylum. They did so because they, as non-Estonian nationals living in a liberated Estonia, were subjected to extreme discrimination and persecution, including physical violence, severe and pervasive discriminatory measures in their limited access to education. The physical robbery was the – or physical violence was the robbery? Yes, Your Honor. They had limited access to education, employment, housing, and medical benefits, as well as extreme economic discrimination. At present, they fear the escalation of such persecution if they're forced to return to Estonia. There's no doubt that the Pasonok family credibly testified at their asylum hearing, and it's apparent from the certified record that the issue of credibility is completely devoid. There should also be no dispute that the Pasonoks in the record as a whole provided sufficient and detailed accounts of their request for asylum, so much so that looking at the totality of the circumstances, the evidence compels the conclusion that the Pasonoks are eligible for asylum. Let me ask a question, which is the difficult issue we have to decide. It seems the record is quite clear that there has been discrimination against them because of their Russian heritage. Unfortunately, despite the difficulty of the attack on Yuri, we don't have any evidence that it was state-sponsored or was because he was Russian. How do we figure out, in your view, whether discrimination rises to the level of persecution under our case law? Your Honor, I think it's important to look at the fact that one of the arguments that we're presenting to this Court is that the Pasonoks weren't represented effectively at their hearing. There were many issues, there were many circumstances that they themselves in their pro se capacity to the Board of Immigration Appeals presented as best as they could. I think it's also very clear from the record that the summary affirmance of the immigration judge's decision completely left lacking any kind of response to this particular argument. As you, Judge McKeown, said as recently as April 14th of 2005 in the case of I think it's Biwak v. Ashcroft, when we're looking at pro se applicants, we have to give their appeals a great amount of deference. And so I think that in this particular case, the BIA's complete lack or ignorance or disregard of this argument really left a lot of the issues, a lot of the circumstances, a lot of the things that they experienced completely void from the record. Go ahead, Judge Thompson, go ahead. What would they assert that they did not assert? Your Honor, there's been a lot of, even to present day, there's been a lot of statewide sponsored discrimination that has risen to such a level that this Court itself has found that when there's a situation of extreme economic discrimination, it can amount to persecution. The hearing was in the 2000, in the 21st century, and yet they were presenting evidence from their counsel from 1995 and 1996, or mostly 1995. What would they present if they were to go back at this point? They would present the death of Yuri's father, who because he was not able to speak the Estonian language, he was not able to be taken care of at a hospital. They refused to speak with him in the Russian language. They would at least present the fact that Yuri did try to go to the government, and he was completely denied any kind of assistance as far as police officials in investigating his particular assault. They would give a lot more evidence with respect to the fact that their child, Anna, was denied education rights because she didn't speak Estonian. They would also present to the present day really what the attitude is in Estonia of trying to diminish to the greatest possible extent the non-Russian speaking minority that currently resides there. It's interesting, as far as an argument for future persecution, as late or as recently as May of this year, our President flew to Moscow to celebrate the commemoration of World War II. And it was a 60-year anniversary. And the President that did not attend such a commemoration was the President of Estonia. Of course, that wouldn't have been able to be presented at their hearing, since that's a recent event. That would not have been within the timeframe of the hearing. Yes, just a minor factor. I understand that Anna did speak Estonian, but was unable to go to the Estonian school and still went to the Russian one. Am I wrong? No. Your Honor, I think you're probably correct in that assumption, but I think that in and of itself shows even more the intense discrimination that this family suffered. Because Anna, if she were able to speak... No, I understand that. I was wondering, when you're relating that fact, that that isn't the way I had read the brief. Your Honor, perhaps she was able to speak Estonian at the time, but I think that makes it even more clear that just the fact that she was a Russian national, she was not able to attend the higher Estonian school. I'd like to turn for a couple of moments to the ineffective assistance of counsel claim. What the Posonic family on pages 10 and pages 82 of the administrative record, which forms their notice of appeal and also their brief that was submitted, what they state is, our representative was not prepared for this case and did not show the court the whole picture of our circumstances. We relied on an attorney to describe our situation and concerns, but our representative was not prepared. It was the reason we were not able to tell our story to the immigration judge. What they were doing was making a pro se ineffective assistance of counsel claim, and I would suggest that at the very least the BIA could have denied it outright, maybe given them some kind of understanding of what Lozada guidelines are so that they could file a motion to reopen or to reconsider. Or sua sponte grant, they certainly can do that. But outright failing to acknowledge this argument, I think the BIA deprived the Posonics their due process rights. The government's brief speaks on this issue, and I believe that it misses the mark completely, because it proposes that pro se individuals should be aware of the Lozada requirements and follow such requirements explicitly in order to get BIA consideration. The government also indicated that the Posonic family failed to demonstrate actual prejudice, but I think that begs the response. Isn't being deported to a country in which you fear persecution, in which you have been persecuted, the ultimate form of actual prejudice when your case is not properly submitted to the court? Would you want to save time for rebuttal? Yes, Your Honor. Thank you very much. Thank you. Good morning. May it please the Court, Joan Smiley from the United States Department of Justice here for the Attorney General. The claim in this case, basically, is that the male petitioner was robbed late at night by unknown individuals in May of 1994, 11 years ago. The evidence in the record indicates that he made a report to the police station, the police investigated, but were unsuccessful in finding the perpetrators in that Mr. Posonic was not able to identify them. The second prong of their claim is that the Estonian authorities will not let the child attend an Estonian school, but that she does attend another school there, or did attend, and they suggest that their employment and housing opportunities are inferior and constitute discrimination. The State Department report in the record indicates that some of these conditions have changed. For instance, there are efforts outlined in those reports from 2001 and 2002, efforts by the government to include the conditions of non-Estonian minorities, which constitute approximately one-third of the population. In the last State Department report, that would total about 475,000 people. As far as the ineffective assistance of counsel claim, my opposing counsel indicated in the record the one sentence that the Board received to notify it of that claim, which was that they were dissatisfied with their attorney and that he didn't present the full case. However, it's clear that they did not comply with Lozada, which is a requirement that failing to abide by it would constitute a no-valid claim being introduced into the record. My understanding is Lozada is not an absolute requirement. There obviously, if there's a claim on the face of it, that can be taken into consideration. I have a question for the government. Given the streamlining and given the at least they raised the claim, we don't know whether the BIA actually denied the claim because of the way the Affirmatives Without Opinions are written. So, I mean, they may have been legitimate, for example, to say we read this, you didn't comply with Lozada, you don't have a claim. What is the government's position on how we review a situation like this where we don't have any evidence whether the BIA considered the claim or not? Well, Your Honor, I believe the evidence is that the allegation was made in the record. The Board reviewed the record extensively. Under 8 CFR 10031E4, the Board is permitted to issue an Affirmatives Without Opinion if the issues on appeal are squarely controlled by Board or Federal court precedent, which is the case here with Lozada, and they do not involve the application of precedent to a novel factual situation. So that would mean the issue is up to us in this case? Excuse me? The issue is before us. The ineffective assistance of counsel claim is then before us in this proceeding? Yes. It was before the Board. Even though the other side really provided very little information. They didn't provide any affidavit concerning their agreement with counsel. They didn't provide evidence that their counsel was informed of the allegation of ineffective assistance. And they presented that to us. I guess the BIA did not rule on that particular issue, but denied the claim, or by affirming, denied the claim. Right. And under, again, under 8 CFR 1003.1E4, factual and legal issues that are not so substantial that the case warrants a written opinion may be grounds for issuing an Affirmatives Without Opinion. So we go back to the IJ record, then, on ineffective assistance and review that in the same manner as we're reviewing the persecution claim? The immigration judge's decision. Do you want to see if there's substantial evidence to support the denial? The judge's decision is the final decision that the court reviews in an Affirmatives Without Opinion case. That's correct. And here the judge correctly determined that poor living conditions and incidents of discrimination do not constitute persecution. And that squares with the precedent of this circuit, as well as the Supreme Court. Therefore. This is an unfortunate case. We have a potentially stateless child and a U.S. citizen child. In these circumstances, does the Immigration Service ever consider mediation to see if there's any other options besides the deportation for resolution of a matter like this? In this case, it would depend on the facts of each individual case. What about the facts of this case? There's nothing in this case really to militate in favor of that sort of remedy. Here we have evidence in the record that there's no persecution claim. There is evidence of discrimination, but yet, as I indicated earlier, one-third of the population of Estonia is Russian ethnicity. And if we were to grant asylum to the petitioners in this case, then arguably all of those individuals would also be eligible for asylum, as would individuals from other countries. Where discrimination is pervasive. Was there a typographical error that they should be sent to India? That's what the order says, as I read it. Was that in the immigration judge's decision? That is in the order, yeah. Yes, that would be a typographical error. I believe they first designated Azerbaijan and then with an alternate order to Estonia. But it did say India. Excuse me? It did say India. That would be a typographical error. It's a cut-and-paste proposition is what it is. How did it get typographical out of Estonia and India? Well, these decisions are issued by the immigration judge right at the time of the hearing, following the hearing. They're dictated orally, and occasionally errors do appear in them, which is regrettable. Would this need at least to be remanded to determine whether they would be returned to Azerbaijan or to Estonia? If the order says India, I'm not sure our court has the authority to, you know, change that location. What would be the procedural mechanism here? The procedural mechanism would be that the government would ensure that removal would take place to the correct country, which would not be India. How do we know that? Well, I have been an attorney since 1980. I've argued before you many times, and I would give you my word that that would occur as an officer of the court. You could write us a letter to that effect of some kind? Yes, I would be happy to do so. I think you ought to do that. Yes, Your Honor. Unless the court has any further questions, we would submit that this Court's precedent, as well as the Supreme Court's precedent, indicates that the board's decision and the immigration judge's decision should be affirmed. Thank you. Your Honors, I think that the critical issue here is that the issue of ineffective assistance of counsel was not before the immigration judge. And so a summary affirmance of the immigration decision, immigration judge's decision, simply undermines that whole entire argument that they were making to the BIA. The Supreme Court in INS v. Ventura, I believe that's the correct case, has stated that the appropriate remedy in a situation like this would be to remand to the board for consideration of the ineffective assistance of counsel issue. As far as the approach that the judge used, this Court has indicated to Judge Ho, who was the representative writer of this opinion, that we don't use the cookie-cutter approach in immigration law. So I think you have a very clear indication, at least by the deportation to India, that that is exactly what was done. Thank you.
judges: Hug, Thompson, McKeown